

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

JR APPAREL WORLD LLC,

                          Plaintiff,

            - against -

GROUPE DYNAMITE, INC.,

                          Defendant.

-------------------------------------------------------------------X

**MEMORANDUM AND ORDER**

Civil Action
No. 25-4374 (GRB)(LGD)

**FILED**
**CLERK**

5/21/2026 3:17 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**GARY R. BROWN, United States District Judge:**

"I don't want to belong to any club that would accept me as one of its members."

      - Groucho Marx[1]

The Palm Springs Country Club in the eponymous California town has been abandoned for more than a decade.  It is now "blighted."  An "eyesore."[2]  Nonetheless, defendant Groupe Dynamite, Inc. ("GDI" or "defendant") sought to invoke the club's halcyon days via a sweatshirt designed for its Generation Z customer base.  The back of the sweatshirt reads "Palm Springs Country Club."  Below, in cursive, is "California."  Neither feature is more than atmospheric.  Between "Palm Springs Country Club" and "California," however, are two words, fully capitalized, in non-serifed font: "MEMBERS

---

[1] Erskine Johnson, "In Hollywood," *Dunkirk Evening Observer*, Oct. 20, 1949, at 22, Column 5.

[2] Mark Talkington, "Development of former Palm Springs Country Club land appears off course again," *Palm Springs Post*, Jun. 1, 2022, https://thepalmspringspost.com/development-of-former-palm-springs-country-club-land-appears-off-track-again/ .

ONLY." Those two words—and whether they invoke another totem of the late millennium—are the subject of this litigation.

The Members Only brand was founded in 1975, and jackets bearing its trademark soon became an emblem of the 1980s and 1990s. Though the brand is no longer a household staple, plaintiff JR Apparel World LLC ("JR" or "plaintiff"), the current rightsholder of the brand and related trademarks, intends to change that. And one step in that strategy is reinforcing the exclusivity of Members Only. Defendant's Palm Springs jacket, plaintiff asserts, infringes upon its trademarks in violation of the Lanham Act, 15 U.S.C. §§ 1051, *et seq*, the Trademark Dilution Revision Act, 15 U.S.C. § 1125(c), and New York law. Plaintiff seeks injunctive relief, compensatory and punitive damages, an accounting and fees.

Before the Court is defendant's motion to dismiss plaintiff's claims, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion to dismiss is GRANTED in part and DENIED in part.

**Factual Background**

According to the Complaint, the Members Only brand was founded in 1975 and quickly became internationally renowned, worn by celebrities like Frank Sinatra, Freddie Mercury and Robert De Niro. Docket Entry ("DE") 1 ("Compl.") ¶¶ 9, 16. Plaintiff acquired the Members Only brand, trademarks and associated properties in 2012 and has continuously sold goods under the brand, substantially exclusively and nationally, since 2013. *Id.* ¶¶ 11-12. Plaintiff does so through both physical retail and e-commerce vendors, as well as its own website. *Id.* ¶¶ 11-12. The best-known item

2

bearing the Members Only mark is the "MEMBERS ONLY Iconic Racer Jacket," which features the mark on the front left chest of the jacket, and which has appeared in scores of popular movies and television programs ranging from *Argo*, *Curb Your Enthusiasm* and *The Sopranos* to, evidently, *Cocaine Bear*. *Id.* ¶ 15. Plaintiff also sells sweatshirts and other apparel with the Members Only branding. *Id.* ¶ 13.



Compl. ¶¶ 10, 13 (examples of apparel with the Members Only mark on the left chest).

Plaintiff holds four United States trademarks for Members Only: No. 1086489 for "sport jackets, cloth jackets, leather jackets, cloth coats, leather coats, dress shirts [and] sweaters"; No. 3915373 for "[c]lothing, namely, men's clothing, namely, sweatpants, sweatshirts, belts, coats, golf apparel, namely, golf shirts, golf trousers, khakis, knit tops, jackets, shoes, sweaters, trousers; ladies' clothing, namely, coats, jackets, shirts; children's clothing, namely, jackets, shirts"; No. 6322461 for "[c]lothing, namely, men's clothing, namely, hats, shorts, sleepwear, socks, underwear, and vests"; and No. 7746838 for "[c]lothing, namely, men's clothing, namely, hats, jogging suits, scarves,

3

shorts, sleepwear, swimwear, underwear; ladies' clothing, namely, sweatpants, sweatshirts, belts, hats, jogging suits, knit tops, scarves, shoes, shorts, sleepwear."  *Id*. ¶¶ 18-21.  All of those trademarks are "standard character claims," meaning they are for "standard characters without claim to any particular font style, size, or color."  *Id*., Exs. C-F.  Plaintiff also holds several related common-law trademarks.  Compl. ¶ 22.

Defendant is a Canada-based clothing company, headquartered in Montreal, Quebec that operates over 300 stores across Canada and the United States and, as relevant here, sells clothing under the brand name "Garage."  *Id*. ¶ 24.  One of the items sold by defendant is an "UltraFleece Hoodie," the back of which bears the Palm Springs Country Club lettering and MEMBERS ONLY text, previously described, which plaintiff contends is "rendered in the same font and stylization" that plaintiff employs for Members Only products.  *Id*. ¶ 28; DE 14-7 (Pl. Br.) at 4.  The front of the jacket reads "California Country Club" on the left-chest panel.  Compl. ¶ 28; *Id*. Ex. F at 4.  No other lettering appears on the front.  *Id*.



Compl. ¶ 28; *Id*. Ex. F at 4 (Defendant's Palm Springs Country Club Jacket).

4

| MEMBERS ONLY | GARAGE |
|---|---|
| MEMBERS ONLY | MEMBERS ONLY |

Compl. ¶ 30 (Comparison of defendant's text and Members Only mark).

Plaintiff informed defendant that it believed the jacket infringed upon the Members Only trademarks, after which the parties engaged in unsuccessful attempts to reach an amicable resolution, the failure of which precipitated the filing of this suit. Compl. ¶¶ 29-38.  Plaintiff asserts five causes of action in the Complaint: (1) trademark infringement, (2) unfair competition and (3) trademark dilution under the Lanham Act, as well as (4) injury to business reputation and (5) common law infringement and unfair competition under New York law.  *Id.* ¶¶ 39-73.

**Standard of Review**

The gravamen of the standard of review for Rule 12(b)(6) motions to dismiss is the question of whether, assuming the allegations of the complaint to be true solely for the purposes of the motion, the complaint sets forth factual material to render the claims plausible.  *Burris v. Nassau Cnty. Dist. Att'y*, 14-CV-5540 (JFB) (GRB), 2017 WL 9485714 at *3-4 (E.D.N.Y. Jan. 12, 2017), *adopted by* 2017 WL 1187709 (E.D.N.Y. Mar. 29, 2017).

**Legal Analysis**

**I.      Fair Use as to Infringement and Unfair Competition**

Defendant does not contest that plaintiff owns the trademarks at issue, nor that plaintiff has sufficiently stated a plausible *prima facie* case under Section 31(1)(a) of the Lanham Act, as to likelihood of confusion.[3]  *See JA Apparel Corp. v. Abboud*, 568 F.3d 390, 400 (2d Cir. 2009) (interpreting factors delineated in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961) (Friendly, J.).

Instead, defendant's primary defense is fair use under the Lanham Act, 15 U.S.C. § 1115(b)(4), which the parties agree would extend to plaintiff's claims for trademark infringement and unfair competition under New York common law.  *See* Pl. Br. at 17.

"To demonstrate fair use, a defendant must establish that it used the allegedly infringing term (1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 92 (2d Cir. 2020).  "Because fair use is a fact-intensive inquiry, it is rarely appropriate for a court to make a determination of fair use at the motion to dismiss stage." *Grant v. Trump*, 563 F. Supp. 3d 278, 284 (S.D.N.Y. 2021).  A motion to dismiss is appropriately granted, however, "where the facts necessary to establish the defense are evident on the face of the

---

[3] Section 31(1)(a), which is codified at 15 U.S.C. § 1114(1)(a), reads:

> Any person who shall, without the consent of the registrant— [] use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant.

complaint." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013). The assertion of a fair use affirmative defense does not alter the pleading burden imposed on plaintiffs. *Id.* ("Plaintiffs, in rebutting defendants' arguments, are held only to the usual burden of a motion to dismiss, which is to say they must plead sufficient facts to plausibly suggest that they are entitled to relief.") (internal citation omitted).

The first, and here dispositive, element of a fair use defense is whether the challenged term was used "other than as a mark." To evaluate whether that prong is satisfied, courts analyze whether the alleged infringer employed the term as "a symbol to attract public attention," *JA Apparel Corp.*, 568 F.3d at 400, or "to identify and distinguish . . . goods [or services] . . . and to indicate [their] source," *Tiffany & Co.*, 971 F.3d at 92 (quoting 15 U.S.C. § 1127) (alterations in original). That analysis "may entail an investigation into, *inter alia*, whether the challenged material appeared on the product itself, on its packaging, or in any other advertising or promotional materials related to the product, and the degree to which defendants were trying to create, through repetition an association between themselves and the mark." *Tiffany & Co.*, 971 F.3d at 92. "The proximity of a defendant's own marks is one factor in analyzing the first element of fair use." *Solid 21, Inc. v. Richemont N. Am., Inc.*, 19-CV-1262 (LGS), 2020 WL 3050970, at *5 (S.D.N.Y. June 8, 2020) (citing *Kelly-Brown*, 717 F.3d at 311). And courts also consider the "presence or absence of precautionary measures such as labeling or other devices designed to minimize the risk that the term will be understood in its trademark sense." *JA Apparel*, 568 F.3d at 401 (quoting *Restatement (Third) of Unfair Competition* § 28 comment c).

Defendant argues that "the notion that [defendant]'s use of MEMBERS ONLY on one of thousands of [defendant]'s products to designate source is incorrect (and again, the Complaint fails to plead that it was)," further stressing that "given [defendant]'s use of a small font for MEMBERS ONLY to describe the larger-font 'Palm Springs Country Club,' scale can be instructive in determining whether a use is made to attract public attention."  DE 14-1 (Def't Br.) at 9 (citing *JA Apparel Corp.*, 568 F.3d at 402).

Unfortunately for defendant, however, that principle can cut the opposite way on the instant facts.  Unlike many apparel trademarks, Members Only is often printed in small, non-descript font.  *See* Compl. ¶¶ 10, 13 (showcasing use of the Members Only mark in small font).  Part of the brand strategy is understatement.  And defendant's problem is accentuated further by the fact that no trademark or other branding identifying defendant as the manufacturer appears in any form on the Palm Springs Country Club jacket.  *See* Compl. ¶ 28.

Defendant attempts to elide this problem by pointing to the Palm Springs Country Club branding itself, noting that "[w]hile [defendant] does not claim trademark rights in PALM SPRINGS COUNTRY CLUB . . . where consumers understand one design element to be a trademark use, they are less likely to understand a second, less prominent design element to be a trademark use."  Def't Br. at 11. Perhaps.  That argument is less persuasive here, however, because the Complaint alleges that the Members Only mark is frequently employed alongside other, established trademarks.  For example, the Complaint includes an image showing the Members Only mark appearing under a styled font "Islanders" on apparel licensed by

the New York Islanders hockey franchise.  Compl. ¶ 33.  Even were Members Only *not*

frequently used in conjunction with other established brands like the Islanders,

however, the Palm Springs Country Club is not itself an established brand or mark.  In

either scenario, it is implausible that a consumer would believe the jacket was

*manufactured* by a county club, let alone one that has been closed for more than ten

years.  Absent any other branding that would identify the jacket as defendant's design,

therefore, one would expect that the inclusion of "Members Only" — a recognizable

mark — may reflect the manufacturer's brand.[4]  Certainly, a reasonable consumer *could*

plausibly make that inference.  And that is all that is required at this stage.

Defendant repeatedly invokes *KP Permanent Make-Up, Inc. v. Lasting Impression I,*

*Inc.*, 543 U.S. 111 (2004) for the proposition that the standard for confusing similarity

should not be conflated with an allegation that defendant used the mark as its own, as

would be necessary to overcome a fair use defense.  *See* Def't Br. at 8.  The argument is

defective for two reasons.  First, while defendant makes a show of parsing the

Complaint and failing to find the requisite allegation, a plaintiff is "under no obligation

to plead facts supporting or negating an affirmative defense in the complaint."  *In Re:*

*Nine W. LBO Sec. Litig.*, 87 F.4th 130, 144 (2d Cir. 2023) (citing *Perry v. Merit Sys. Prot.*

*Bd.*, 582 U.S. 420 n.9, 198 (2017) ("an affirmative defense to a plaintiff's claim for relief

---

[4] Plaintiff also notes that defendant did not employ any verbiage that would distinguish defendant's design from the Members Only mark, such as "a members only club," "an only members club," "club members only," etc.  Pl. Br. at 16.

[is] not something the plaintiff must anticipate and negate in her pleading.") (cleaned up); *see also Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007).

Second, plaintiff does plead that the alleged infringement "constitute[d] a knowing, purposeful, and/or willful infringement of [plaintiff]'s trademark rights, particularly given [defendant]'s receipt and acknowledgement of [plaintiff]'s [demand letter]." Compl. ¶ 47. And that allegation is supported by sufficient background facts to permit a plausible inference that the Palm Springs Country Club jacket was purposefully designed to evoke an association with the Members Only brand. The absence of defendant's branding or any other precautionary measures that would demonstrate to a consumer that the jacket was not manufactured under the Members Only brand is sufficient for that purpose, at least on a motion to dismiss.

The fair use defense is affirmative and conjunctive, meaning a defendant's failure to carry its burden as to any element means that the defense fails as a matter of law. Because defendant does not carry its burden to show that its use of the Members Only phrase was "other than as a mark," the Court does not reach the second and third elements of the fair use defense. *See Videri, Inc. v. ONAWHIM (OAW) Inc.*, 23-CV-2535 (GHW), 2024 WL 4027980, at *15 n.14 (S.D.N.Y. Sept. 3, 2024) ("Because defendant bears the burden of establishing that each prong of the affirmative defense is evident on the face of the complaint, it is unnecessary to discuss the other two elements of defendant's fair-use defense.") (cleaned up); *Glob. Brand Holdings, LLC v. Rae Dunn Design LLC*, 23-CV-1644 (DEH), 2024 WL 96537, at *2 (S.D.N.Y. Jan. 9, 2024) (same).

Fair use was also defendant's only defense to the state law infringement and unfair competition claims, and the parties agree that the state law claims employ the same fair use standard as the Lanham Act.  Therefore, the motion to dismiss is denied as to both the federal and state law infringement and unfair competition claims.

## II.    Trademark Dilution

### a.  Dilution Under the TDRA

The Trademark Dilution Revision Act (TDRA) provides that:

> the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1).  Courts have construed the statute as imposing four elements, requiring the plaintiff to establish: "(1) the senior mark is famous; (2) the defendant is making use of the junior mark in commerce; (3) defendant's use of the junior mark began after the senior mark became famous; and (4) a likelihood of dilution."  *Walker Wear LLC v. Off-White LLC*, 624 F. Supp. 3d 424, 429 (S.D.N.Y. 2022).

Defendant raises an affirmative defense to plaintiff's dilution claims based on fair use, which defendant asserts turns on "the reasons addressed . . . with respect to trademark infringement and unfair competition."  Def't Br. at 17.  Because a fair use defense, as previously discussed, is not viable on these facts at the motion to dismiss stage, that argument fails.

Defendant also argues that plaintiff has not adequately pled that Members Only is a famous brand such that dilution would be cognizable through the TDRA. Under the TDRA, a mark is famous if "it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). In determining whether that standard is met, courts consider "all relevant factors," including:

(i)    The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.

(ii)    The amount, volume, and geographic extent of sales of goods or services offered under the mark.

(iii)    The extent of actual recognition of the mark.

(iv)    Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

*Id.* "[T]he requirement that the mark be 'famous' and 'distinctive' significantly limits the pool of marks that may receive dilution protection," *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 105 (2d Cir. 2009), and "[o]nly trademarks that enjoy such broad renown as to at least approach (if not attain) the status of 'household names' may qualify as famous brands under federal law," *Walker Wear*, 624 F. Supp. 3d at 429. As part of that analysis, "'niche fame' among a specific marketplace or group of consumers is insufficient[,] and the general public itself must associate the trademark at issue with the trademark owner." *Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 193 F. Supp. 3d 245, 283 (S.D.N.Y. 2016), *aff'd*, 699 F. App'x 93 (2d Cir. 2017). That strict standard is

12

because "[o]ne of the major purposes of the TDRA was to restrict dilution causes of action to those few truly famous marks like Budweiser beer, Camel cigarettes, Barbie Dolls, and the like." *Luv N' Care, Ltd. v. Regent Baby Prods. Corp.*, 841 F. Supp. 2d 753, 758 (S.D.N.Y. 2012).

Therefore, even at the motion to dismiss stage, the Second Circuit has stressed that "where it is possible for a district court to determine in the first instance the issue of the famousness of a senior mark, the court would be well advised to do so." *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 450 (2d Cir. 2004) (explaining that adjudicating fame early "will often obviate the costly litigation of potentially much thornier issues, such as whether actual blurring or tarnishing of the senior mark has in fact occurred . . ."). And at that stage, courts have regularly dismissed complaints as "plainly insufficient" where plaintiffs fail to support dilution claims "with any factual allegations concerning, *inter alia*, [the plaintiff's] advertising budget, similarity of fame to marks that courts have considered famous in the TDRA context, and the amount of sales of goods offered under the mark," relying instead on "spare, conclusory allegations that the [plaintiff's] Trademarks 'are widely recognized by the general consuming public of the United States' and '[plaintiff] has expended substantial time, effort, money, and resources [on] advertising and promot[ion]." *CDC Newburgh Inc. v. STM Bags, LLC*, 692 F. Supp. 3d 205, 235 (S.D.N.Y. 2023).

Plaintiff offers no substantive response to defendant's fame argument. The topic is entirely unmentioned in its briefing, outside of a cursory statement in the conclusion that plaintiff "does [not] waive its dilution claim. As pled, [plaintiff] asserts a federal

13

trademark dilution claim under the Trademark Dilution Revision Act, 15 U.S.C. § 1125(c)." Pl. Br. at 17.  That recitation is insufficient to preserve plaintiff's dilution claim, for when a party raises an issue "only in a perfunctory manner, unaccompanied by any effort at developed argumentation, it must be deemed waived — or, more precisely, *forfeited.*" *In re Demetriades*, 58 F.4th 37, 54 (2d Cir. 2023) (cleaned up) (emphasis in original); *see also Walker v. New York State Dep't of Health*, 788 F. Supp. 3d 427, 502-3 (E.D.N.Y. 2025) (finding that plaintiffs failed to state a claim where they "simply assert[ed] that '[p]laintiffs have adequately pled a violation of the Fourteenth Amendment Due Process Clause' and then restate[d] verbatim allegations made in the [a]mended [c]omplaint" and "fail[ed] to make any substantive arguments or cite any legal authority" in support); *Aiello v. Stamford Hosp.*, 487 F. App'x 677, 678 (2d Cir. 2012) ("The premise of our adversarial system is that federal courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them.") (cleaned up).

In any event, even had plaintiff not waived the argument, plaintiff fails in the Complaint to make adequate, non-conclusory showings regarding advertising budgets, sales or other crucial metrics.  Plaintiff did plead that the Members Only mark was worn by many celebrities and appeared in many films and television programs, but those assertions are insufficient, even at the motion to dismiss stage, for considerable media coverage does not on its own warrant a finding of fame.  *See Walker Wear*, 624 F. Supp. 3d at 430 (finding claim that "media coverage of the [m]arks 'spans three decades and includes *national* publications and film distributions including by Netflix,' was

14

insufficient because [the] [p]laintiff is incorrect that media coverage, even at a far more considerable level [such as the University of Texas football logo], necessarily warrants a finding of fame.") (citing *Bd. of Regents, Univ. of Tex. Sys. v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 679 (W.D. Tex. 2008)).

As discussed in *Walker Wear* and *Schutte Bagclosures*, a brand must at least approach the standard of a "household name" that would be familiar to the "general public" to be famous under the TDRA.  The standard denotes a degree of fame that spans generations, such that the average person would not only know of the brand herself, but would expect her parents and children to know too — otherwise, courts' express rejection of "niche" fame as inactionable would make no sense.  *See Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*, 12-CV-8205, 2013 WL 3943267, at *10 (S.D.N.Y. July 31, 2013) ("'an extremely high degree of recognition among consumers of luxury jewelry' . . . is the very definition of the type of 'niche' fame that is insufficient . . . for TDRA purposes") (cleaned up).

Plaintiff does not approach that showing, however formulated.  Indeed, as defendant notes, "if the [Members Only] [m]ark were sufficiently famous there would be no need to 'reestablish' or 'revitalize' it to make it 'relevant' again, yet that is precisely what plaintiff's own website describes as its 'primary goals' for the brand." Def't Br. at 20 (quoting Compl. ¶ 12).

As a result, the motion is granted as to the TDRA claim, and that claim is dismissed.

15

### b. *Dilution Under New York Law*

Defendant does not raise any defenses specifically in response to plaintiff's claim for dilution under New York General Business Law § 360-L.  Because the state cause of action for dilution requires different elements than a TDRA claim, dismissal of a TDRA count does not mandate dismissal of even a similar § 360-L claim.  *See Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 111 (2d Cir. 2010) ("New York State law also provides for protection against [] dilution . . . [t]he state law is not identical to the federal one, however.") (cleaned up).  Indeed, here, the Court is compelled *not* to dismiss the state law claim because besides the fair use defense already dispatched, defendant's only defense against dilution is that Members Only is not a 'famous' mark, and "[u]nlike federal trademark dilution law, [] New York's trademark dilution law does not require a mark to be 'famous' for protection against dilution to apply."  *Starbucks Corp.*, 588 F.3d at 114.  As a result, the motion to dismiss is denied as to the state law dilution claim.

**Conclusion**

Accordingly, defendant's motion is GRANTED as to the TDRA dilution cause of action.  That claim is dismissed with prejudice.  The motion is DENIED as to the remaining claims.

**SO ORDERED.**

16

Dated: Central Islip, New York
      May 21, 2026

                                                     */s/ Gary R. Brown*
                                                     GARY R. BROWN
                                                     United States District Judge